IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| LOCAL 1575 OF THE INTERNATIONAL LONGSHOREMEN'S ASSOCIATION (THE UNION)<br>Plaintiff<br><br>v.<br><br>HORIZON LINES OF PUERTO RICO, INC., ILA-PRSSA WELFARE AND PENSION FUNDS, AND ACE INSURANCE COMPANY<br><br>Defendants | CIVIL NO. 14-CV-<br><br>COLLECTION OF MONEY, BREACH OF CONTRACT, DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF |

# COMPLAINT

TO THE HONORABLE COURT:

Comes now Plaintiff **Local 1575 of the International Longshoremen Association** through the undersigned attorney and very respectfully alleges, states and prays:

## I. NATURE OF THE CASE

1. This is an action brought under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. Sec. 185, for breach of a labor contract to which the plaintiff **Local 1575**, herein refer as to "the union", and the defendant **Horizon Lines of Puerto Rico, Inc.**, herein refer as to "HL", are parties. The action is also brought by the union against ones of

1

its funds **(ILA-PRSSA Welfare and Pension Fund)** and its insurance company.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. Sec. 1331, 29 U.S.C. Sec. 185 and 29 U.S.C. Sec. 1132. Supplemental jurisdiction exist pursuant to 28 U.S.C. Sec. 1367 as to Plaintiff's state law claims under Articles 1066, 1077, 1116, 1206, 1207, 1802 and 1803, 31 L.P.R.A. Secs. 3041, 3166, 3371, 3373, 3375, 5141 and 5142, respectively.

3. Venue lies in this District pursuant to 29 U.S.C. Sec. 185 and 29 U.S.C. Sec. 1132(e).

## III. PARTIES

4. Plaintiff Local 1575 is a labor organization that represents HL's employees. As such, Local 1575 is a "labor organization representing employees in an industry affecting commerce" within the meaning of the statutory provision, Section 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185, authorizing "[s]uits for violation of contracts" between such a labor organization and "an employer". Local 1575's principal offices are located at 1055 J.F. Kennedy Ave. PH-1, San Juan, Puerto Rico 00920.

6. Defendant HL is a Delaware corporation and wholly-owned subsidiary of Horizon Lines, Inc. authorized to conduct business in Puerto Rico. The defendant company is within the meaning of the statutory

2

provision, Sec. 301 of the LMRA, 29 U.S.C. Sec. 185, authorizing "[s]uits for violation of contracts" between such an employer and a "labor organization representing employees in an industry affecting commerce." HL provides terminal services in Puerto Rico. Thus, Defendant is an "employer" as defined in 29 U.S.C. Sec. 152(2). HL's principal place of business is located at Metro Office Park, Metro Office 3, Suite 400, Guaynabo, Puerto Rico 00968.

6. Defendant **ILA-PRSSA Welfare and Pension Funds**, herein refers as to "ILA-PRSSA", was created pursuant to an Agreement and Declaration of Trust of the ILA-PRSSA Pension Fund signed between representatives of the Local 1575, the contributing employers and their respective trustees. The current trustees representing the employer side are: Paul Hydock (HL's Third Party Service Manager), Mark Blankenship (Horizon Lines, Inc. Vice Pres. of Human Resources) and Julio Gil (HL's Finance Director). The union side is represented by: Juan Cruz-Resto, Jacinto Orengo and Pedro Sanchez-Marcano. The ILA-PRSSA constitutes a pension fund regulated under the provisions of the Employee Retirement Income and Security Act" (ERISA), 29 U.S.C. Sec. 1001, *et seq.*, as amended by the "Pension Protection Act Of 2006". ILA-PRSSA offices are located at 1055 J.F. Kennedy Ave., Suite 202, San Juan, Puerto Rico 00920.

7. Defendant **ACE Insurance Company** is a corporation duly organized under the Laws of the Commonwealth of Puerto Rico which at

3

all relevant times to this complaint has in effect an insurance policy for the benefit of codefendants ILA-PRSSA, its trustees, administrators, officers, executive, representatives and officials with coverage for claims as the ones set forth in the present complaint. Its offices are located at 33 Resolución Street, Suite 500, Doral Bank Building, San Juan, Puerto Rico 00920.

### IV. FACTUAL ALLEGATIONS

8. Local 1575 and HL have been signatories to a series of collective bargaining agreements (CBA). Their last CBA is in effect from October 1st, 2004 through September 30, 2010.

9. The 2004-2010 collective bargaining agreement has been extended two times by the parties. The last agreed extension expires on September 30, 2014.

10. In accordance with the CBA the union and HL constituted various funds to which the employer (HL) agreed to make contributions. Royalty Fund Mechanized Cargo – Local 1575 of the International Longshoremen's Association, herein refers as to "RF", was created in 1976 and amended by a deed in 1993, pursuant to the Taft Hartley Act. RF was funded with contribution from the employers. Nonetheless, HL does not make contributions directly to the building fund since on or about 2004. The current trustee representing the union side is Mr. Juan Ortiz-Resto. The employer side is represented by attorney Rafael Cuevas-Kuinlam. RF

4

offices are located at 1055 J.F. Kennedy Ave., PH-3, San Juan, Puerto Rico 00920.

11. Since on or about mid 80's RF has been administering the building facilities located at 1055 J.F. Kennedy Ave. (Marginal) in San Juan, Puerto Rico. Thus, RF is the landlord of several tenants that occupy the tenth floors building.

12. On June 5, 2002, upon considering the healthy financial standing of the "building fund", the trustees in the RF agreed to make a distribution of funds in order to provide economic assistance to the union membership, beneficiaries of the fund, to compensate for the unexpected termination of the collective bargaining agreement with Navieras de Puerto Rico, Inc., which filed a Chapter 11 petition for bankruptcy in 2002 and later was liquidated under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. Accordingly, in 2002 RF implemented a disbursement of funds that was made directly to the union membership and their respective relatives and/or heirs in the amount of $14,178,175.00.

13. Later, during the negotiations between the parties to extend 2001-2004 CBA that took place during 2004 and 2005[1] HL's executives and

---

[1] The CBA was signed on April 15, 2005 with retroactive effect to October 2004 (CBA 2004-2010, between Horizon Lines of Puerto Rico, Inc. and Local 1575 International Longshoremen's Association, AFL-CIO.)

5

the union's representative Mr. John D. Baker agreed to transfer to ILA-PRSSA the unclaimed amount of $646,217.00. At that time Local 1575 was under a trusteeship by the International union and Baker was its trustee. As such, Baker was also the sole union trustee in all of the Local 1575 funds. Consequently, in 2005 the union and the employer's trustee decided to transfer the unclaimed surplus of $646,217.00 to ILA-PRSSA with the precise instruction and duty of finalizing the distribution of the remaining balance of $646,217.00 to the beneficiaries and/or heirs. The transferal of the money was finally carried out on April 16, 2009.

14. The RF approval of the above-mentioned bank transaction is contained in a "Resolution" signed by then RF's President Francisco Diaz-Morales, representing the union side, and Robert A. Ramirez-Tosado, for the employer side. The money to be transferred was being deposited in a UBS Financial Services account number 1G09559 under the name of Royalty Fund Mechanized Cargo-Local 1575. The transfer was made to ILA-PRSSA's account number 1G10057 also with UBS Financial Services.

15. Nevertheless, ILA-PRSSA failed to accomplish the designated assignment. Up until the filing of the instant case no efforts has been made by ILA-PRSSA to conclude the duty assigned or return the money above-mentioned. Furthermore, said

Defendant neither provided information about any action taken to implement the disbursement process nor provides periodical reports about the balance of the account. Essentially, ILA-PRSSA kept the information about the account confidential.

16. Since on or about late 2013 the union have been demanding from ILA-PRSSA information about the money moved to the ILA-PRSSA's UBS account and return to RF the complete amount of $646,217.00 tendered over in 2009.

17. However, it was not until approximately Mid-March of 2014, upon aggressive demand by the union and the RF's union trustee, that ILA-PRSSA finally disclosed information about the status of the funds.

18. The designated project and/or assignment by the RF to ILA-PRSSA encompass and foreseen a comprehensive security of the funds transferred in order to prevent any loss or decrease on the funds.

19. Defendant ILA-PRSSA was fully aware that the money was transferred in order to conclude the disbursement of the benefit in accordance with the parameters established by RF's Board of Directors for the distribution of funds. At no time did the plaintiff authorized, consent or agreed an investment of any kind of unreasonable risk. Upon information and/or belief it is allege

7

that any determination in that regard was made solely by ILA-PRSSA's administrators, representative, executives or the employer's trustees.

20. Upon information and/or belief it is allege that the funds transferred to ILA-PRSSA were improperly, without knowledge and without authorization of the union and/or the union's representative in the fund, placed in a risk investment account and/or financial instrument, causing severe economic loss to RF.

21. An account statement of the account no. 1G10057 issued by UBS Financial Services on November 21, 2013 obtained recently by the plaintiff shows that by 2013 the opening portfolio value was $785,862.07. By 2012 was $776,748.44 and by 2011 the value was $642,156.00. However, by March 2014 the balance decreased to $426,047.87.

22. By refusing to turn over the portfolio value of the investment with UBS in 2013, when the value was $785,862.07, Defendants have caused economic damages to RF in the amount of $359,814.20 up until the filing of the present complaint. This amount may increase while the funds remain in a risky investment plan and under the control of ILA-PRSSA.

23. In the alternative, it is aver that RF suffered economic loss in the amount of $220,169.13, up until the filing of this complaint, due to Defendants' negligence and failure to adequately protect the money given by RF on April 16, 2009 totalizing $646,217.00.

8

24    In order to address certain economic challenges RF is currently going through, since 2013 its trustee, the unions and the union's trustees in the ILA-PRSSA have been demanding from defendant HL's executives and the ILA- PRSSA Fund, through its Administrator Rafael Cortina, Esq., to return to the RF the complete amount of $646,217.00 tendered over in 2009 or any remaining balance in the account.

25.    However, on or about April 14, 2014 HL's executives formally notified to RF, the union and the union's counsel it will not agree to return the aforementioned funds.

26.    Even worse, HL has given specific instructions to its three (3) trustees within the ILA-PRSSA fund not to consent or agree to return the above mentioned funds to the RF despite knowing the critical need for the money.

27.    The designated assignment by the RF to ILA-PRSSA understood that Defendant was to accomplish the task given within a reasonable period of time. Having elapsed a prolonged period of time without performing the duty assigned ILA-PRSSA is under the obligation to revert the funds belonging to RF in order to allow the building fund achieve its purposes. It is the RF prerogative to determine how it will manage the assets and monies pertaining to the fund. Having passed more than a decade without any claim for the benefit it is evident that there will be no further claimants demanding the optional economic help offered by RF in

9

2002. In any case, RF will address any request considering the best interest of the fund and pursuant to its trustees' fiduciary responsibility.

28. On the other hand, it is clearly that ILA-PRSSA has placed the money at serious and continuous risk of lost. Its administrators have not been diligent in protecting adequately the funds under their control and custody. They have breach their fiduciary duties as custodian of the funds.

29. Defendants failed to act with care, skill, prudence and diligence in the regard to the funds transferred by RF. A fiduciary must give "appropriate consideration" to the facts and circumstances that the fiduciary knows or should know are relevant to the particular investment, including the role that the investment plays in the plan's investment portfolio. The concept of "appropriate consideration" includes a determination by the fiduciary that a particular investment or investment course of action is reasonably designed to further the purposes of the plan, taking into consideration the risk of loss and the opportunity for gain associated with such investment.

### V. LIABILITY

30. HL and ILA-PRSSA refusal to return the amount of $646,217.00 or any balance in the account currently under their custody or control pursuant to the agreement recited at paragraph thirteen (13) of this complaint constitute a breach of contract. The pact reached by the union, HL and RF implied that ILA-PRSSA was to act in a diligent fashion and

10

accomplish the task assigned within a reasonable period of time.

31. At all relevant time to this complaint ILA-PRSSA acted as fiduciary of RF in regard to the funds tendered for trusteeship and safekeeping.

32. Defendants have failed to make any reasonable effort to remedy the breach.

33. HL's actions and omissions are within the purview of Section 301(a) of the Labor Relations Management Act.

34. By committing the above-mentioned negligent, reckless and wanton actions, Defendants have incurred in negligence and are liable to the plaintiff for any economic damage the RF may suffer.

35. Plaintiff RF is entitled to recover and collect the money placed under the custody and control of ILA-PRSSA Fund.

36. Plaintiff is entitled to terminate the agreement entered into with Defendants in which delegated the disbursement of the surplus amount above-mentioned. Thus, Defendants must return the money given by RF, any profit derived from the investment and compensate RF for any economic loss caused by their actions.

37. Also, the plaintiff is entitling to declaratory judgment and injunctive relief against the defendants.

## VI. COUNT ONE

### (Breach of Contract, 29 U.S.C. Sec. 185 (a))

38. Plaintiff repeats and reincorporates the allegations contained above as if fully stated herein.

39. This cause of action is brought pursuant to Sec. 301 of the Labor Management Relations Act, 61 Stat. 156, 29 U.S.C. Sec. 185 (a).

40. As set forth above, in violation of 29 U.S.C. Sec. 185 (a), Defendants' actions and omissions constitute a breach of contract.

41. As consequence of the above, the plaintiff is entitled to a judgment, decree or order mandating the return of the money transferred to ILA-PRSSA in 2009, to recover any economic damages it may suffer due to Defendants' refusal to return the above-mentioned amount and to an injunctive relief as a remedy to prevent further damages. Plaintiff has no adequate remedy at law and would suffer irreparable harm in the absence of injunctive relief.

42. Defendants have caused economic damages to RF in the amount of $359,814.20 up until the filing of the present complaint. This amount may increase while the funds remain in a risky investment plan and under the control of ILA-PRSSA. Thus, RF economic damages are estimated in excess of $785,862.07.

43. In the alternative, it is allege that RF suffered economic loss in the amount of $220,169.13, up until the filing of this complaint, due to

Defendant negligence and failure to effectively protect the money given by RF on April 16, 2009. Thus, RF economic damages are estimated in excess of $646,217.00.

## VII. COUNT TWO

### (Negligence, 31 P.R.L.A. Secs. 5141 and 5142)

45. Plaintiff repeats and reincorporates the allegations contained above as if fully stated herein.

45. This cause of action is brought pursuant to Articles 1802 and 1803 of the Puerto Rico Civil Code, 31 P.R.L.A. Secs. 5141 and 5142, respectively.

46. As set forth above, in violation of 31 P.R.L.A. Sec. 5141, Defendant HL's action and omissions constitute negligence subject to compensation. Therefore, Defendants are liable for the actions and omissions of its agents, officers, employees, administrators and trustees.

47. As a consequence of the above, Plaintiff, and therefore RF, are entitled to recover any economic loss it may suffer due to Defendants' actions and omissions.

48. Defendants have caused economic damages to RF in the amount of $359,814.20 up until the filing of the present complaint. This amount may increase while the funds remain in a risky investment plan and under the control of ILA-PRSSA. Thus, RF economic damages are estimated in excess of $785,862.07.

49. In the alternative, it is allege that RF suffered economic loss in the amount of $220,169.13, up until the filing of this complaint, due to Defendant negligence and failure to effectively protect the money given by RF. Thus, RF economic damages are estimated in excess of $646,217.00.

## VIII. COUNT THREE

**(Termination and/or Demand for Specific Performance and Compliance of Contract, Damages, Articles 1066, 1077, 1116, 1206, 1207, 1208 and 1210, 31 P.R.L.A. Secs. 3041, 3052, 3166, 3371, 3372, 3373 and 3375, respectively)**

50. Plaintiff repeats and reincorporates the allegations contained above as if fully stated herein.

51. The present causes of action are brought pursuant to Articles 1066, 1077, 1116, 1206, 1207 of the Puerto Rico Civil Code, 31 L.P.R.A. Secs. 3041, 3166, 3371, 3373, and 3375, respectively.

52. As set forth above, in violation of the above-mentioned statutory provisions, Defendant's actions and omissions constitute violation of an agreement subject to compensation for damages and demand of specific performance and compliance.

53. As a consequence of the above, Plaintiff, and therefore RF, are entitled to recover any economic loss it may suffer due to Defendants' actions and omissions.

55. Defendants have caused economic damages to RF in the amount of $359,814.20 up until the filing of the present complaint. This

14

amount may increase while the funds remain in a risky investment plan and under the control of ILA-PRSSA. Thus, RF economic damages are estimated in excess of $785,862.07.

55. In the alternative, it is allege that RF suffered economic loss in the amount of $220,169.13, up until the filing of this complaint, due to Defendant negligence and failure to effectively protect the money given by RF. Thus, RF economic damages are estimated in excess of $646,217.00.

## IX. COUNT FOUR

### (Declaratory Relief under 28 U.S.C. Sec. 2201)

56. Plaintiff repeats and reincorporates the allegations contained above as if fully stated herein.

57. This remedy is brought pursuant to 28 U.S.C. Sec. 2201.

58. As set forth above, in violation of the above-mentioned statutory provisions, Defendant's actions and omissions create an ongoing problem that will continue to maintain RF at risk of suffering severe economic loss.

59. Plaintiff, and therefore RF, has no adequate remedy at law and would suffer irreparable harm in the absence of injunctive relief.

60. Plaintiff is entitled to a declaratory judgment against Defendants holding the termination of the agreement entered into with Defendants in which RF delegated the disbursement of the surplus amount above-mentioned and that Defendants must return the money given by RF

15

to ILA-PRSSA and any profit derived from the investment.

## X. COUNT FIVE

### (Request for Attorney Fees and Cost)

61. Plaintiff repeats and reincorporates the allegations contained above as if fully stated herein.

62. Plaintiff is entitled to attorney's fees and cost.

## XI. COUNT SIX

### (PRAYER FOR RELIEF)

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

A. For and Opinion and Order entering judgment in favor of Plaintiff and against Defendants holding the termination of the agreement entered into with Defendants in which RF delegated the disbursement of the surplus amount above-mentioned and that Defendants must return the money given by RF to ILA-PRSSA and any profit derived from the investment;

B. For an order granting RF the economic damages requested in the complaint;

C. For an order by way of instructing its trustees and the ILA-PRSSA's Administrator to authorize the transfer of funds;

D. For an order for equitable relief, remedial and injunctive relief, including an order to the RF's Administrator to execute or perform any act necessary to return the twenty five cents contribution to

16

the RF immediately and without delay;

E. For all cost and reasonable attorney's fees incurred by Plaintiff in defending this matter; and

F. Any other relief that the Court deems just and proper.

**Respectfully Submitted.**

In San Juan, Puerto Rico, this 28rd day of April of 2014.

s/Arturo Luciano-Delgado
USDC-PR 206306
Attorney for Plaintiff Local 1575
Luciano Law Offices
1055 J.F. Kennedy Ave. PH-2A
San Juan, Puerto Rico 00920-1711
Tel. & Fax (787)782-0820
E-mail: LucianoLawOffice@aol.com

17